**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1
2
3
4
5
6               UNITED STATES  DISTRICT COURT
7                Northern District of California
8

9   BOARD OF TRUSTEES OF THE                    No. C 12-165 CW (MEJ)
    LABORERS HEALTH AND WELFARE
10  TRUST FUND FOR NORTHERN                      **AMENDED REPORT &**
    CALIFORNIA, et al.,                          **RECOMMENDATION RE**
11                                               **PLAINTIFFS' MOTION FOR**
                            Plaintiffs,          **DEFAULT JUDGMENT**
12        v.
                                                 **(Docket No. 22)**
13  KUDSK CONSTRUCTION, INC., a
    California corporation; and LARRY JAMES
14  KUDSK, an individual,

15                          Defendants.
    _____/
16

17                          **INTRODUCTION**

18        Plaintiffs[1] are various trust funds that bring this action for damages for breach of a collective

19  bargaining agreement entered into with Defendant Kudsk Construction, Inc.  Compl. ¶¶ 1, 3, Dkt. No.

20  1.  Pending before the Court is Plaintiffs' Motion for Default Judgment.  Dkt. No. 22.  In their

21  Motion, Plaintiffs request that the Court grant default judgment against Kudsk Construction for

22  breach of the agreement, and against Defendant Larry James Kudsk for liability as a fiduciary.  Pls.'

23  Mot. at 1.  Plaintiffs seek to recover outstanding employee fringe benefit contributions, attorneys'

24  fees and costs, and also seek a mandatory injunctive order requiring Kudsk Construction to submit to

25

26  _____

27        [1]The Plaintiffs are: Board of Trustees of the Laborers Health and Welfare Trust Fund for
    Northern California; Board of Trustees of the Laborers Vacation-Holiday Trust Fund for Northern
28  California; Board of Trustees of the Laborers Pension Trust Fund for Northern California; and Board
    of Trustees of the Laborers Training and Retraining Trust Fund for Northern California.  Compl. ¶ 1,
    Dkt. No. 1.

1  an audit of its books and records for the period April 1, 2010 through the present. *Id.* at 2.  On

2  August 24, 2012, the Honorable Claudia Wilken, the presiding judge in this case, referred Plaintiffs'

3  Motion to the undersigned to prepare a report and recommendation.  Dkt. No. 27.  Defendants have

4  failed to respond to Plaintiffs' Motion.  After consideration of Plaintiffs' Motion, supporting

5  materials, and the controlling legal authorities, the undersigned **RECOMMENDS** that the District

6  Court **GRANT** Plaintiffs' Motion for Default Judgment against Defendants Kudsk Construction, Inc.

7  and Larry James Kudsk, as set forth below.

8  **BACKGROUND**

9      Plaintiffs are multi-employer, employee benefit plans within the meaning of §§ 3(3) and 3(37)

10  of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(3) and 1002(37).

11  Compl. ¶ 3.  The Trustees of the Boards of Trustees are the administrators and named fiduciaries for

12  the Laborers Trust Funds.  *Id.*  The Trust Funds, established under Trust Agreements, consist of all

13  employee fringe benefit contributions that are to be made by employers pursuant to collective

14  bargaining agreements as well as all returns on contributions and any other property received or held

15  by the Trust Funds.  *Id.* ¶¶ 3-6.

16      Kudsk Construction is a California corporation with its principal place of business in

17  Berkeley, California.  *Id.* ¶ 7.  Kudsk Construction is an employer within the meaning of Section 3(5)

18  and Section 515 of ERISA, and an employer in an industry affecting commerce within the meaning of

19  Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 180, *et seq.  Id.*

20  Larry Kudsk is the RMO/CEO/PRES of Kudsk Construction and operates and controls Kudsk

21  Construction.  *Id.*  Plaintiffs allege that Larry Kudsk acted directly or indirectly in the interest of

22  Kudsk Construction with respect to the employee benefit plans at issue, and that at all relevant times,

23  Defendants constituted a single employer.  *Id.* ¶ 25.  Plaintiffs further allege that Larry Kudsk

24  exercised authority or control over the payment of the employee fringe benefit contributions required

25  to be made to the Trust Funds by Kudsk Construction, and that Larry Kudsk was a fiduciary as

26  defined by ERISA Section 3(21), 29 U.S.C. § 1002(21), and was therefore also a party in interest as

27  defined by  ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A).  *Id.*

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

On or about July 6, 2005, Kudsk Construction executed a Memorandum Agreement with the Northern California District Council of Laborers, through which Kudsk Construction became bound to a written collective bargaining agreement with the Northern California District Council of Laborers entitled the Laborers' Master Agreement for Northern California.  *Id.* ¶ 9.  By virtue of the Master Agreement, Defendants promised and agreed that: (1) they would pay employee fringe benefit contributions into each Trust Fund in regular monthly installments; (2) that in the event that any of the monthly installments were not paid in full, they would pay interest on the delinquent contribution in the amount of 1.5% per month until paid in full, and would also pay the amount of $150.00 for each delinquent contribution as liquidated damages (not as a penalty); and (3) that if any suit with respect to any of said contributions or payments were filed against them, they would pay into said Trust Funds the attorneys' fees, costs, and all other expenses incurred in connection with such suit. *Id.* ¶ 10.

On January 10, 2012, Plaintiffs filed their Complaint seeking to recover employee fringe benefit contributions owed by Defendants.  In their Complaint, Plaintiffs allege that Defendants materially breached and broke the Master Agreement and trust agreements in the following respects:

(a)   by failing to pay all employee fringe benefit contributions reported into each Trust Fund (reported, not paid) for the period June, July, and August, 2011, in the principal amount of $13,065.19;

(b)   by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions (reported, not paid), for the period June, July and August, 2011 in an amount to be proven at trial;

(c)   failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions (reported, not paid), for the period June, July and August, 2011 in an amount to be proven at trial;

(d)   by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions (not reported, not paid), for the period December, 2008, August and December, 2009, and January - March, 2010 in an

UNITED STATES DISTRICT COURT
For the Northern District of California

1  amount to be proven at trial; and

2  (e)  by failing to pay interest and liquidated damages on employee fringe benefit

3  contributions that were paid, but paid late, for the period July - December, 2009, May,

4  July, August, September, November and December, 2010 and January - May, 2011 in

5  the amount of $3,356.82 as of November 25, 2011.

6  Compl. ¶ 13.

7  Plaintiffs allege that these breaches proximately caused damages in the following amounts: (a)

8  for unpaid contributions (reported, not paid) in the principal amount of $13,065.19 plus interest and

9  liquidated damages in an amount to be proven at trial; (b) for unpaid contributions (not reported, not

10  paid) in the principal amount of $25,515.22 plus interest and liquidated damages in an amount to be

11  proven at trial; and (c) for interest and liquidated damages on contributions paid, but paid late, in the

12  amount of $3,356.82 as of November 25, 2011. *Id.* ¶ 14.

13  On February 15, 2012, Defendants, through shared counsel, filed answers to Plaintiffs'

14  complaint. Dkt. Nos. 6 and 7. At Defendants' request, the parties subsequently agreed to stay the

15  case for ninety days to allow the parties attempt to resolve the dispute informally. Dkt. No. 20 at 2.

16  The Court granted the parties' stipulation on March 2, 2012 and ordered the parties to appear at a

17  case management conference on June 6, 2012 at 2:00 p.m. Dkt. No. 15. The Court directed the

18  parties to submit a joint case management statement seven days prior to the case management

19  conference advising the Court as to the status of the parties' informal attempts to resolve the case. *Id.*

20  Once the stay was issued, Defendants refused to respond to Plaintiffs' attempts to discuss the

21  case. Dkt. No. 20 at 2. Prior to the case management conference, Plaintiffs drafted a joint case

22  management statement and sent it to Defendants for their input, but Defendants did not respond. *Id.*

23  Defendants also failed to appear at the June 6, 2012 case management conference. Dkt. No. 17. At

24  that time, the Court directed Plaintiffs to file a motion for default judgment. *Id.*

25  On July 6, 2012, Plaintiffs filed a motion to strike Defendants' answers. Dkt. No. 18. The

26  Court granted Plaintiffs' motion on July 23, 2012, finding that Defendants' conduct demonstrated

27  willfulness, bad faith, or fault by failing to engage in informal settlement discussions after requesting

28

4

1    that Plaintiffs agree to stay prosecution of this action for this purpose and the Court ordered such a

2    stay.  Dkt. No. 20 at 4.

3            On August 22, 2012, Plaintiffs filed the present Motion for Default Judgment.  Dkt. No. 22.

4    In their motion, Plaintiffs seek the following money judgment: $14,293.41 (including interest) in

5    contributions that were reported but not paid, $46,528.74 (including interest) in contributions not

6    reported and not paid, liquidated damages in the amount of $3,356.82, and attorneys' fees and costs

7    in the amount of $15,613.84.  Pls.' Mot. at 14.  Plaintiffs also seek an injunction ordering Kudsk

8    Construction to allow a Trust Funds auditor to come onto Defendants' premises and to submit to an

9    audit of their financial records for the period April 1, 2010 through the present. *Id.* at 14-15.  A

10   review of the docket reflects that Defendants have made no appearance in this case since the parties

11   filed their stipulation to stay the case.

## DISCUSSION

**A.     Legal Standard**

14           Federal Rule of Civil Procedure ("Rule") 55(b)(2) permits a court, following default by a

15   defendant, to enter default judgment in a case.  "The district court's decision whether to enter default

16   judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In

17   determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following

18   factors for the court to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of

19   plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

20   action; (5) the possibility of dispute concerning material facts; (6) whether default was due to

21   excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

22   decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Where a default

23   judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which

24   states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded

25   in the pleadings."  Upon entry of default, all factual allegations within the complaint are accepted as

26   true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*,

27   826 F.2d 915, 917-18 (9th Cir. 1987).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**B.    Jurisdiction**

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The undersigned will therefore assess whether the Court has subject matter jurisdiction over this action, whether personal jurisdiction exists over the parties, and whether Plaintiffs effected proper service of process.

1.    Subject Matter Jurisdiction

In this action, Plaintiffs assert claims to enforce the term of their plans and to enforce provisions of ERISA.  This is an action for damages for breach of the collective bargaining agreement for recovery of unpaid trust fund contributions, for breach of fiduciary duty and for injunctive relief.  Accordingly, Plaintiffs lawsuit is authorized as a federal cause of action pursuant to ERISA, 29 U.S.C. § 1132(a).  Jurisdiction also exists pursuant to the LMRA § 301, 29 U.S.C. § 185(c).

2.    Personal Jurisdiction

As the party seeking to invoke this Court's jurisdiction, Plaintiffs bear the burden of establishing that it has personal jurisdiction over Defendants.  *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  Traditional bases for exercising personal jurisdiction require the defendant's physical presence, domicile, or consent.  *See, e.g.*, *Gonzales v. Palo Alto Labs, Inc.*, 2010 WL 3930440, at *4 (N.D. Cal. Oct. 6, 2010); *Martin v. D-Wave Sys. Inc.*, 2009 WL 4572742, at *2 (N.D. Cal. Dec. 1, 2009).  Here, the Court may properly exercise personal jurisdiction over Kudsk Construction because it is a California corporation with its principal place of business located in Berkeley, California. Larry Kudsk is the RMO/CEO/PRES of Kudsk Construction and operated and controlled Kudsk Construction.  Plaintiffs are administered in Fairfield, California, and contributions are made to the Laborers Trust Funds, and benefits are paid from, a corporate co-trustee bank in the Northern District of California.  Hagan Decl. ¶ 8, Dkt. No. 24.  Thus, Plaintiffs' claims arise out of Defendants' business within the state and the Court may exercise personal jurisdiction over Defendants.  *See Velez*

6

*v. Enter. Protective Servs., Inc.*, 2011 WL 3443637, at *3 (N.D. Cal. Aug. 8, 2011).

### 3.   Service of Process

In addition to ensuring that jurisdiction exists, the Court must also "assess the adequacy of the service of process on the party against whom default is requested." *United States v. Sundberg*, No. C-09-4085, 2011 WL 3667458, at *3 (N.D. Cal. Aug. 22, 2011) (internal quotations omitted). Pursuant to Rule 4(h)(1)(B), a domestic corporation may be served by delivering a copy of the summons and complaint to an officer or authorized agent of the company. Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiffs served Kudsk Construction on January 25, 2012, by personal service at its place of business. Dkt. No. 4. On January 27, 2012, Larry Kudsk was personally served at Kudsk Construction. Dkt. No. 5. On February 15, 2012 an answer was filed on behalf of both defendants by William J. Braun, Braun & Melucci, LLP, La Jolla, California. Dkt. Nos. 6 and 7. Thus, Plaintiffs properly effected service of process.

**C.   *Eitel* Analysis**

Having found that the Court has jurisdiction over this action and that Plaintiffs properly served Defendants, the undersigned turns to the *Eitel* factors.

### 1.   Prejudice to the Plaintiffs

Under the first *Eitel* factor, the Court must examine whether Plaintiffs will be prejudiced if the Court denies their request for entry of default judgment. *Eitel*, 782 F.2d at 1471-72. Here, if the Court were to deny their request, Plaintiffs would have no other avenue for recovery, and further delay in securing a judgment would only increase the chances that Plaintiffs will be unable to recover the amounts owed. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Absent a default judgment, there is a likelihood of prejudice to Plaintiffs; as the enforcement provisions of ERISA reserve exclusive jurisdiction to this Court for claims such as this, denial of Plaintiffs' motion would leave them without a remedy. Therefore, the undersigned finds that this factor weighs in favor of granting default judgment.

### 2.   The Merits of Plaintiffs' Substantive Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the

UNITED STATES DISTRICT COURT
For the Northern District of California

1    sufficiency of the Complaint.  *Eitel*, 782 F.2d at 1471-72.  In order to weigh in their favor, Plaintiffs

2    must assert claims upon which they may recover.  *See PepsiCo*, 238 F. Supp. 2d at 1175.

3                   a.      *Unpaid and Late Contributions*

4           Plaintiffs' claim is for unpaid contributions in violation of ERISA.  Section 515 of ERISA

5    provides:

6           Every employer who is obligated to make contributions to a multiemployer plan under
            the terms of the plan or under the terms of a collectively bargained agreement shall, to the
7           extent not inconsistent with law, make such contributions in accordance with the terms
            and conditions of such plan or such agreement.

8

9    29 U.S.C. § 1145.  Section 1145 creates a federal cause of action against employers who do not make

10   timely contributions to employee benefit plans, and ultimately allows plan fiduciaries to enforce

11   pre-existing obligations created under the collective bargaining agreement.  *Trs. of the Screen Actors*

12   *Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009)

13   (authorizing, *inter alia*, a plan fiduciary to bring a civil action to enforce a collective bargaining

14   agreement).  In order to successfully assert this claim, Plaintiffs must prove the following: (1) the

15   Trusts are multi-employer plans under 29 U.S.C. § 1002(37); (2) the collective bargaining agreement

16   obligated Defendants to make the employee benefit contributions; and (3) Defendants failed to make

17   the contribution payments pursuant to the collective bargaining agreement.  *Bd. of Trs. of the Sheet*

18   *Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl. Sys.*, 2004 WL 1465719, at *2 (N.D.

19   Cal. May 21, 2004).  In this case, Plaintiffs' Complaint and supporting materials allege facts

20   sufficient to prove the necessary elements.

21          As a threshold matter, Defendants must be deemed employers before they are bound to

22   comply with § 1145.  *See* 29 U.S.C. § 1145.  An "employer" is defined as "any person acting directly

23   as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan,

24   and includes a group or association of employers acting for an employer in such capacity."  29 U.S.C.

25   § 1002(5).  As discussed above, Kudsk Construction is an employer within the meaning of Section

26   3(5) and Section 515 of ERISA, and an employer in an industry affecting commerce within the

27   meaning of Section 301 of the LMRA.  Compl. ¶ 7.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

8

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Further, Larry Kudsk is the RMO/CEO/PRES of Kudsk Construction and operates and

2    controls Kudsk Construction. *Id.* Plaintiffs allege that Larry Kudsk acted directly or indirectly in the

3    interest of Kudsk Construction with respect to the employee benefit plans at issue, and that at all

4    relevant times, Defendants constituted a single employer. *Id.* ¶ 25.  Under ERISA, "a person is a

5    fiduciary with respect to a plan to the extent [ ] he exercises . . . any authority or control respecting

6    management or disposition of [a plan's] assets . . . ."  29 U.S.C. § 1002(21)(A).  Any individual who

7    acts as a fiduciary with respect to a plan or trust covered by ERISA can be liable for breach of

8    fiduciary duty under ERISA.  *Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir. 1991).  The Ninth

9    Circuit liberally construes the definition of fiduciary under ERISA.  *See Ariz. State Carpenters*

10   *Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997); *Thomas, Head & Greisen Empl.*

11   *Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir. 1994).  "Unlike the common law definition under which

12   fiduciary status is determined by virtue of the position a person holds, ERISA's definition is

13   functional." *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2nd Cir. 1997) (citations omitted). As Larry

14   Kudsk exercised authority or control over the payment of the employee fringe benefit contributions

15   required to be made to the Trust Funds by Kudsk Construction, he is a fiduciary as defined by ERISA

16   Section 3(21), 29 U.S.C. § 1002(21), and was therefore also a party in interest as defined by  ERISA

17   Section 3(14)(A), 29 U.S.C. § 1002(14)(A).  Thus, the undersigned finds that Defendants fall within

18   the purview of § 1145 and are obligated to make payments on any existing employment agreements.

19   The requirements of § 1145 make clear that an employer must be bound under a collective

20   bargaining agreement to make employee contributions to a multi-employer plan. *Bd. of Trs. of the*

21   *Sheet Metal Workers v. Accu-Balance Assocs., Inc.*, 2006 WL 3591141, at *1-3 (N.D. Cal. Dec. 11,

22   2006).  Under ERISA, these plans are defined as employee benefit pension plans that are made

23   pursuant to a collective bargaining agreement and to which more than one employer contributes.  29

24   U.S.C. §§ 1002(3), (37).  According to Plaintiffs, the Trust Funds were set up as employee benefit

25   plans under ERISA and the LMRA.  Compl. ¶ 3.  Defendants' obligation to contribute to the benefit

26   plans arose out of the Master Agreement at issue here, which Kudsk Construction executed on July 6,

27   2005. *Id.* ¶¶ 9-10; Hagan Decl. ¶ 6; Ex. A.  Under the Agreement, Defendants were obligated to

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1   make contributions to the Laborers Trust Funds based upon the number of hours worked by their

2   employees.  Hagan Decl. ¶ 7.  Such contributions were due to the Trust Funds on the 25th day of the

3   month following the month in which the hours were worked.  *Id*.  By virtue of the Master Agreement,

4   Defendants promised and agreed that: (1) they would pay employee fringe benefit contributions into

5   each Trust Fund in regular monthly installments; (2) that in the event that any of the monthly

6   installments were not paid in full, they would pay interest on the delinquent contribution in the

7   amount of 1.5% per month until paid in full, and would also pay the amount of $150.00 for each

8   delinquent contribution as liquidated damages (not as a penalty); and (3) that if any suit with respect

9   to any of said contributions or payments were filed against them, they would pay into said Trust

10   Funds the attorneys' fees, costs, and all other expenses incurred in connection with such suit.  *Id.* ¶

11   10.

12        In their Complaint, Plaintiffs allege that Defendants materially breached the Master

13   Agreement by reporting but failing to pay all employee fringe benefit contributions reported into each

14   Trust Fund  for the period June, July, and August, 2011.  Compl. ¶ 13.  Plaintiffs also performed an

15   audit of Kudsk Construction, during which they discovered that Kudsk Construction failed to report

16   and thus failed to pay contributions due and owing for the period December 2008, August and

17   December 2009, and January - March 2010 in the amount of $25,515.22.  *Id.*; Hagan Decl. ¶ 22.

18   Thus, pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to an award of the unpaid principal

19   balance of the contributions.  Based on the foregoing, the Court finds that the Plaintiffs have

20   sufficiently stated a claim for violation of § 1145 against Defendants.

21              b.      *Injunctive Relief*

22        Plaintiffs also seek a mandatory injunction under ERISA, which authorizes the Trust Funds to

23   audit the records of the employer so long as the audit is done in furtherance of a proper purpose.

24   Plaintiffs have alleged that Defendants are required to allow the Trust Funds access to its books and

25   records to determine the amount of trust fund contributions due and owing.  Compl. ¶ 30.  Here,

26   Plaintiffs claim that an audit of Defendants' records is the only way to determine the full amount of

27   employer contributions owed to them under the terms of the Trust Agreements.  *Id.* ¶¶ 31-32.

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Additionally, Plaintiffs allege that they have an obligation to ensure that contributions required to be

2   made to the Trust Funds are fully and correctly made. *Id.* ¶ 30.  Under the Trust Agreement,

3   Defendant Kudsk Construction is contractually obligated to submit to an audit of financial records by

4   Plaintiffs.  Hagan Decl. ¶ 14; Ex. E.  The right of employee benefit plans to enforce such power to

5   audit is well established.  *Central States, Southeast & Southwest Areas Pension Fund v.*

6   *Central Transport, Inc.*, 472 U.S. 559, 571-72 (1985).  Plaintiffs are therefore entitled to an audit of

7   Kudsk Construction's financial records.

8          Based on this analysis, the undersigned finds that factors two and three weigh in Plaintiffs'

9   favor.

10          3.      The Sum of Money at Stake in the Action

11          The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of

12   Defendants' conduct.  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  When the amount at stake is

13   substantial or unreasonable in light of the allegations in the complaint, default judgment is

14   disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff

15   sought $3 million in damages and the parties disputed material facts in the pleadings).  In their

16   Motion, Plaintiffs seek the following:

17   **Contributions Reported, Not Paid:**

18   •      § 1132(g)(2)(A) unpaid contributions:      $13,065.19

19   •      § 1132(g)(2)(B) interest:      $614.11

20   •      § 1132(g)(2)(C) liquidated damages:      $614.11

21   Subtotal:      **$14,293.41**

22   **Contributions Not Reported, Not Paid [Audit]:**

23   •      § 1132(g)(2)(A) unpaid contributions:      $25,515.22

24   •      § 1132(g)(2)(B) interest:      $10,506.76

25   •      § 1132(g)(2)(C) liquidated damages:      $10,506.76

26   Subtotal:      **$46,528.74**

27   **Liquidated Damages and Interest accruing on
     Contributions Paid, But Paid Late:**      **$3,356.82**

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

| | | |
|---|---|---|
| 1 | **Attorneys' Fees and Costs** | **$15,613.84** |
| 2 | **Total** | **$79,792.81** |

Pls.' Mot. at 14-15.  As discussed above, this amount is authorized under the Agreement and is thus

proportionate and appropriately tailored to Defendants' specific misconduct in failing to make timely

contribution payments.[2]  *See Bd. of Trs. of the Sheet Metal Workers*, 2006 WL 3591141, at *1.

Additionally, the recommended judgment, as set forth below, is both reasonable and required both by

the collective bargaining agreement and 29 U.S.C. § 1132.  Thus, this factor weighs in favor of

default judgment.

        4.    <u>Possibility of Dispute Concerning a Material Fact</u>

        The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  Here, Defendants were given ample

opportunity to respond to the Complaint and participate in the proceedings.  On February 15, 2012,

Defendants, through shared counsel, filed answers to Plaintiffs' Complaint.  Dkt. Nos. 6 and 7.  At

Defendants' request, the parties subsequently agreed to stay the case for ninety days to allow the

parties attempt to resolve the dispute informally.  Dkt. No. 20 at 2.  The Court granted the parties'

stipulation on March 2, 2012 and ordered the parties to appear at a case management conference on

June 6, 2012 at 2:00 p.m.  Dkt. No. 15.  The Court directed the parties to submit a joint case

management statement seven days prior to the case management conference advising the Court as to

the status of the parties' informal attempts to resolve the case.  *Id.*

        However, once the stay was issued, Defendants refused to respond to Plaintiffs' attempts to

discuss the case.  Dkt. No. 20 at 2.  Prior to the case management conference, Plaintiffs drafted a joint

case management statement and sent it to Defendants for their input, but Defendants did not respond.

*Id.*  Defendants also failed to appear at the June 6, 2012 case management conference.  Dkt. No. 17.

At that time, the Court directed Plaintiffs to file a motion for default judgment.  *Id.*

        On July 6, 2012, Plaintiffs filed a motion to strike Defendants' answers.  Dkt. No. 18.  The

---

    [2]The specific amount of interest, liquidated damages, and attorneys' fees and costs is
discussed in greater detail in Section E, below.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Court granted Plaintiffs' motion on July 23, 2012, finding that Defendants' conduct demonstrated

2   willfulness, bad faith, or fault by failing to engage in informal settlement discussions after requesting

3   that Plaintiffs agree to stay prosecution of this action for this purpose and the Court ordered such a

4   stay. Dkt. No. 20 at 4. A review of the docket shows that, since the filing of the stipulation to stay,

5   Defendants have failed to appear in this case. However, given that Defendants' obligations under the

6   Master Agreement are clear and supporting materials have been provided, the possibility for any

7   factual disputes is unlikely. Thus, this factor weighs in favor of default judgment.

8         5.    <u>Whether Default was Due to Excusable Neglect</u>

9         The sixth *Eitel* factor examines whether Defendants' failure to respond to Plaintiffs'

10  allegations was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Plaintiffs properly served

11  Defendants with the Summons and Complaint. Dkt. Nos. 4, 5. However, as discussed above,

12  Defendants' subsequent conduct demonstrated willfulness, bad faith, or fault by failing to engage in

13  informal settlement discussions after requesting that Plaintiffs agree to stay prosecution of this action

14  for this purpose, thus resulting in their answers being stricken by the Court. Defendants have made

15  no subsequent appearance and have not responded to Plaintiffs' Motion. Consequently, there is

16  nothing suggesting that Defendants' failure to appear and litigate this matter is based on excusable

17  neglect. As such, this factor weighs in favor of granting default judgment.

18        6.    <u>Strong Policy in Federal Rules for Deciding on the Merits</u>

19        The last *Eitel* factor examines whether the policy of deciding a case based on the merits

20  precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished

21  that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* However, courts

22  have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing

23  alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation and citation

24  omitted). Similarly, other courts have stated that default judgment is appropriate when a defendant

25  refuses to litigate a case. *See, e.g.*, *Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4

26  (N.D. Cal. Jan. 8, 2010). Here, given that Defendants refused to participate in the proceedings, a

27  decision on the merits would not otherwise be possible. In situations such as this, Rule 55(b) allows

28

13

the court to grant default judgment.  Therefore, this factor weighs in Plaintiffs' favor.

**D.      Summary**

Based on the foregoing analysis, this Court finds that each of the *Eitel* factors weighs in favor of granting default judgment.  The undersigned therefore **RECOMMENDS** that the Court **GRANT** Plaintiffs' Motion and enter default judgment against Defendants.

**E.      Damages**

Having found default judgment appropriate, the undersigned turns to the issue of damages. Under ERISA § 502(g), 29 U.S.C. § 1132(g), a plan fiduciary who prevails in a § 1145 claim is entitled to: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages as specified in the plan; (4) reasonable attorneys' fees and costs; and (5) other appropriate legal or equitable relief.  *Bay Area Painters & Tapers v. Brown*, 2007 WL 1302982, at *4 (N.D. Cal. May 3, 2007).  Here, Plaintiffs seek the following damages and fees:

| **Damage Type** | **Amount** |
|---|---|
| Unpaid Contributions | $38,580.41 |
| Interest and Liquidated Damages on Unpaid Contributions | $22,241.74 |
| Interest and Liquidated Damages on Contributions Paid Late | $3,356.82 |
| Attorneys' Fees and Costs | $15,613.84 |
| **Total** | **$79,792.81** |

Pls.' Mot. at 14.  At this stage, Plaintiffs have the burden of proving their damages through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

1.      Unpaid Contributions

Pursuant to the Master Agreement, Plaintiffs seek an award of unpaid contributions in the amount of $38,580.41.  Pls.' Mot. at 7-8.  In support of this figure, Plaintiffs submit the Declaration of John J. Hagan, the Accounts Receivable Manager for the Laborers Funds Administrative Office of

UNITED STATES DISTRICT COURT
For the Northern District of California

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Northern California, Inc.  Dkt. No. 24.  As the Accounts Receivable Manager, Mr. Hagan monitors

2  the compliance of employers that are signatory to the collective bargaining agreements underlying the

3  Trust Funds – he oversees the records of the employer's enrollment under the collective bargaining

4  agreement, the employer's submission of monthly employer reports, and the employer's payment of

5  monthly fringe benefit contributions.  Hagan Decl. ¶ 3.  Mr. Hagan's Declaration establishes that

6  Kudsk Construction reported contributions due and owing for the period June, July, and August 2011

7  totaling $13,065.19, but failed to pay the contributions for these months.  *Id.* ¶ 17; Exs. I, J.  The

8  outstanding contributions reported but not paid are outlined in a summary sheet and are tracked to the

9  electronic Employer Reports of Contribution that Kudsk Construction submitted for the period June,

10  July and August, 2011.  *Id.*, Exs. I, J.  Defendant Kudsk Construction electronically submitted its

11  Employer Reports of Contributions for June, July and August, 2011, detailing, as required, hours of

12  covered work under the collective bargaining agreement.  *Id.* ¶ 18.  The electronic Employer Reports

13  of Contribution submitted by Kudsk Construction identify the employees, by name and social

14  security number [redacted], whose hours are being reported, and the hours worked by them for the

15  reported month.  *Id.*, Exs. I, J.

16       Mr. Hagan's Declaration also establishes that Fund Office performed an audit for the period

17  January 2008 through March, 2010, and found that Kudsk Construction failed to report and failed to

18  pay contributions due and owing for its covered employees for the period December 2008, August

19  and December 2009, and January through March 2010, in the amount of $25,515.22.  *Id.* ¶ 22; Exs. L,

20  M (audit summary report).  The audit summary report identifies the employee, by name and social

21  security number (redacted), whose hours were not reported, and the hours of covered work due for

22  the relevant period.  The undersigned has reviewed the Master Agreement and audit summary report

23  and finds that the calculations are accurate.  Accordingly, Plaintiffs have sufficiently demonstrated

24  they are entitled to $38,580.41 in unpaid contributions.

25       2.    <u>Interest and Liquidated Damages on Unpaid Contributions</u>

26       In addition, Plaintiffs seek interest and liquidated damages on all unpaid contributions, for a

27  total of $22,241.74, with $11,120.87 in interest and an equal amount in liquidated damages.  Pls.'

28

1   Mot. at 6-8.  Section 1132(g)(2) permits a plan fiduciary to collect interest on all delinquent

2   contribution once they have prevailed on a § 1145 claim.  29 U.S.C. § 1132(g)(2).  The "interest

3   [rate] on unpaid contributions shall be determined by using the rate provided under the plan, or if

4   none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  Here, the Master

5   Agreement provides that in the event Kudsk Construction fails to make the monthly installments on

6   or before the 25th day of the month in which the employee fringe benefit contributions are due, the

7   Kudsk is subject to interest at the rate of 1.5% per month.  Hagan Decl. ¶ 16.  Thus, Plaintiffs seek

8   $614.11 in interest for the period of June through August 2011, based on $13,065.19 in unpaid

9   contributions, and $10,506.76 for the period of December 2008, August and December 2009, and

10  January through March 2010, based on $25,515.22 in unpaid contributions.  *Id.* ¶¶ 18-19, 23-24.  As

11  Defendants agreed to be bound by this interest provision, the undersigned finds that Plaintiffs are

12  entitled to $11,120.87.

13       As to liquidated damages, the Ninth Circuit has made clear that an award of liquidated

14  damages under § 1132(g)(2) is "mandatory and not discretionary."  *Operating Eng'rs Pension Trust*

15  *v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984).  A plaintiff is entitled to a

16  mandatory award under § 1132(g)(2) if the following requirements are met: (1) the employer must be

17  delinquent at the time the action is filed; (2) the district court must enter a judgment against the

18  employer; and (3) the plan must provide for such an award.  *Nw. Adm'rs, Inc. v. Albertson's, Inc.*,

19  104 F.3d 253, 257 (9th Cir. 1996).  Any liquidated damages provided in a Trust Agreement cannot be

20  in excess of 20% of the amount of unpaid contributions.  29 U.S.C. § 1132(g)(2)(C)(ii).  Liquidated

21  damages are set at $150 for each month that the contribution is delinquent.  Hagan Decl. ¶¶ 18-19.

22  However, pursuant to the Trust Funds' Liquidated Damage Program, Plaintiffs are entitled to an

23  award in an amount equal to the greater of the interest of the unpaid contributions or liquidated

24  damages at the contract rate.  *Id.* ¶ 20; Ex. H.  Since the amount of liquidated damages would be less

25  than the interest, Plaintiffs seek an award equal to the interest due, $11,120.87.  *Id.* ¶¶ 20, 25.

26       In this case, Plaintiffs have satisfied all three requirements for an award under § 1132(g)(2).

27  First, Plaintiffs have alleged that Kudsk Construction was delinquent in making its contractually

28

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1  obligated payment contributions.  Compl. ¶ 13.  Mr. Hagan's Declaration provides a breakdown of all

2  unpaid contributions for each of the employees.  Hagan Decl. Exs. I-M.  Second, the undersigned has

3  recommended above that the District Court enter default judgment against Defendants.  Third, the

4  Master Agreement authorizes the award of liquidated damages following an employer's default.

5  Hagan Decl. ¶ 16.

6        However, the $11,120.87 in liquidated damages plead by Plaintiffs is in excess of 20%.  As

7  discussed above, Plaintiffs seek $38,580.41 in unpaid contributions.  Given the 20% liquidated

8  damages limit established by 29 U.S.C. § 1132(g)(2)(C)(ii), Plaintiffs are entitled to no more than

9  $7,716.08.  Accordingly, the undersigned finds that Plaintiffs have met their burden of showing

10  entitlement to liquidated damages.  The undersigned thus recommends that Plaintiffs be awarded

11  liquidated damages equal to $7,716.08.

12        3.    Interest and Liquidated Damages on Contributions Paid Late

13        Plaintiffs also seek $3,356.82 in interest and liquidated damages for the period Defendants

14  failed to pay contributions on time – July through December 2009; May, July, August, September,

15  November, and December 2010; and January through May 2011.  Pls.' Mot. at 9.  ERISA, 29 U.S.C.

16  § 1132(g)(2)(E), provides that the Court may award "such other legal and equitable relief as the court

17  deems appropriate."  This includes damages on employee fringe benefit contributions that were paid,

18  but paid late.  *Bd. of Tr. v. JRD*, 99 F.Supp.2d 1115, 1118, 1122 (C.D. Cal. 1995) (awarding

19  liquidated damages for delayed contributions).  Thus, the undersigned finds an award of interest and

20  liquidated damages for delayed payments appropriate.  In his Declaration, Mr. Hagan has established

21  that Plaintiffs are entitled to $3,356.82 in interest and damages.  Hagan Decl. ¶ 27; Ex. O.

22  Accordingly, the undersigned recommends that the District Court award damages in this amount.

23        4.    Attorneys' Fees and Costs

24        Finally, Plaintiffs seek $14,796.50 in attorneys' fees and $817.34 in costs incurred in this

25  action, for a total of $15,613.84.[3]  Pls. Mot. at 11-12; Richman Decl., Ex. B.  Plan fiduciaries who

26  _____

27        [3]In their motion, Plaintiffs seek only $14,796 in attorneys' fees rather than $14,796.50.
28  Including costs of $817.34, this would bring the total to $15,613.34  However, because the total in

17

UNITED STATES DISTRICT COURT
For the Northern District of California

1   obtain a judgment on a § 1145 claim are also entitled to "reasonable attorney's fees and costs of the

2   action."  29 U.S.C. § 1132(g)(2).

3       Plaintiffs have submitted evidence indicating they incurred court costs, consisting of a

4   complaint filing fee in the amount of $350, messenger services totaling $169.60, service of the

5   summons and complaint at $297, and public records search charges of $.74.  Pls.' Mot. at 12;

6   Richman Decl., Ex. B, Dkt. No. 23.  As they appear reasonable, the undersigned recommends that the

7   District Court award these costs.

8       Plaintiffs also seek $14,796.50 in attorneys' fees.  Richman Decl., Ex. B.  Under ERISA §

9   1132(g)(2), fee awards are mandatory; however, courts should consider the reasonableness of these

10  fees.  *Kemmis v. McGoldrick*, 706 F.2d 993, 997-98 (9th Cir. 1983) (stating that § 1132(g)(2) "now

11  makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and

12  collect benefit fund contributions").  The Ninth Circuit has articulated five factors that should be

13  considered in determining reasonable attorney fees: (1) the degree of the opposing parties' culpability

14  or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of

15  fees against the opposing parties would deter others from acting under similar circumstances; (4)

16  whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA

17  plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the

18  parties' positions.  *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).  These factors

19  are intended to guide the court in its discretion, but none of the factors are dispositive; any

20  combination can support an award of fees.  *Credit Managers Ass'n of S. Cal. v. Kennesaw Life &*

21  *Acc. Ins. Co.*, 25 F.3d 743, 749 (9th Cir. 1994).

22      Here, the award of attorneys' fees would deter other employers from becoming delinquent on

23  employee contributions because fees can add greatly to the amount of unpaid contributions.  An

24  award of fees further encourages employers to be more diligent in their record keeping and prompt

25

26  the motion is $15,613.84 and the calculations in Mr. Richman's Declaration provide for a total of
27  $14,796.50 in attorneys' fees, this omission of $.50 from the attorneys' fees appears to be
28  inadvertent error.

18

1  with their payment.  Also, Plaintiffs' straightforward claims have been adequately supported and the

2  merits of their position are well-grounded.  Accordingly, the undersigned finds that the above factors

3  weigh in favor of awarding attorneys' fees to Plaintiffs.

4        Once fees under ERISA are awarded, the court must calculate the lodestar amount to assess

5  the reasonableness of attorneys' fees.  *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750.  The lodestar

6  amount is determined by "multiplying the number of hours reasonably expended on the litigation by a

7  reasonable hourly rate."  *Id.* (internal quotations omitted).  In awarding attorneys' fees, courts must

8  look to the prevailing market rates in the relevant community.  *Bell v. Clackamas Cnty.*, 341 F.3d

9  858, 860 (9th Cir. 2003).

10        In this case, Plaintiffs' counsel billed a total of 43  hours in connection with this suit

11  beginning on February 7, 2011 and ending July 31, 2012.  Richman Decl., Ex. B.  Ronald L.

12  Richman, senior shareholder at Bullivant Houser Bailey PC, was the primary attorney in this matter.

13  All time incurred in the prosecution of this case, other than .7 hours of work performed by associate,

14  Arlena Carrozzi, was performed by Mr. Richman.  *Id.*  The billings fall into the following general

15  categories of work: (a) review and outline of the delinquent contributions, confirmation with

16  Plaintiffs regarding the amounts due and owing, along with a calculation of interest and liquidated

17  damages; (b) draft complaint; (c) provide counsel for Defendants with a breakdown of the

18  contributions due and attempts to engage Defendants' counsel in informal settlement discussions; (d)

19  at the direction of this Court, after Defendants failed to participate in the June 6, 2012 case

20  management conference, filed motion to strike Defendants' answers; (e) request for entry of default;

21  (f) preparation and filing of motion for default judgment along with all supporting declarations and

22  documentation.  *Id.*, Ex. B.

23        *a.*    *Reasonableness of Hourly Billing Rate*

24        To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate

25  must be assessed.  *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750.  In doing so, the court must look

26  to the prevailing market rates in the relevant community for similar work by attorneys of comparable

27  skill, experience, and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

19

UNITED STATES DISTRICT COURT
For the Northern District of California

1    2008).  Generally, the relevant community is the forum where the district court sits.  *Id.*

2         Here, Plaintiffs' claimed hourly rates are $345 for Ronald L. Richman and $290 for Arlena

3    Carrozzi.  Richman Decl. ¶ 5.  Plaintiffs' hourly rates are within the range found reasonable in

4    ERISA actions by other judges in the Northern District.  *See, e.g., Bd. of Trs. Of the Laborers Health*

5    *and Welfare Trust Fund v. Perez*, 2011 WL 6151506, at *14 (N.D. Cal. Nov. 7, 2011) (finding hourly

6    rates of $325 and $345 reasonable in ERISA case, where Mr. Richman represented the trust

7    plaintiffs).  After reviewing Plaintiffs' billing records and considering the experience of counsel, the

8    undersigned finds that the hourly rates are reasonable and consistent with prevailing market rates in

9    the Northern District.

10                    *b.      Reasonableness of Hours Billed*

11        In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit

12   detailed records justifying the hours that have been expended.  *Chalmers v. City of Los Angeles*, 796

13   F.2d 1205, 1210 (9th Cir. 1986).  The court may reduce the hours through its discretion "where

14   documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the

15   hours expended are deemed excessive or otherwise unnecessary."  *Id.*

16        In this case, Plaintiffs' counsel billed a total of 43 hours.  Richman Decl., Ex. B.  In a similar

17   ERISA action in the Northern District in which Mr. Richman represented the trust fund plaintiffs, the

18   Court reduced the number of hours billed by 50% because Mr. Richman failed to show that the case

19   was "particularly complex or required extensive work beyond the typical ERISA case."  *Perez*, 2011

20   WL 6151506, at *14.  In that case, however, the defendant made no appearance and the plaintiffs

21   were only required to request entry of default and then file a motion for default judgment.  In

22   contrast, as discussed above, Defendants filed answers to Plaintiffs' Complaint and, at Defendants'

23   request, the parties subsequently agreed to stay the case for ninety days to allow them to attempt to

24   resolve the dispute informally.  However, once the stay was issued, Defendants refused to respond to

25   Plaintiffs' attempts to discuss the case and Plaintiffs were forced to file a motion to strike

26   Defendants' answers.  The Court granted Plaintiffs' motion, finding that Defendants' conduct

27   demonstrated willfulness, bad faith, or fault by failing to engage in informal settlement discussions

28

after requesting that Plaintiffs agree to a stay.  Thus, after reviewing the detailed billing records provided in Mr. Richman's Declaration, which offer a breakdown of the work completed and the specific tasks performed, the undersigned finds that the hours billed are reasonable.  The undersigned thus recommends that Plaintiffs be awarded attorneys' fees in the amount of $14,796.50.

### CONCLUSION

Based on the above analysis, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Default Judgment be granted and that default judgment be entered against Defendants.  Plaintiffs should be awarded:

(1) unpaid contributions in the amount of $38,580.41;

(2) interest and liquidated damages on the unpaid contributions in the amount of $18,836.95;

(3) interest and liquidated damages on late contributions in the amount of $3,356.82; and

(4) attorneys' fees and costs in the amount of $15,613.84;

(5) a mandatory injunction requiring Defendants to submit to an audit of Kudsk Construction's financial records by Plaintiffs for the period April 1, 2010 to the present; and finally,

(6) the Court should retain jurisdiction of the parties and the subject matter to enforce its mandatory injunction and to entertain a motion for a further money judgment, should the audit disclose amounts that may be owed by Defendants.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation within fourteen (14) days after being served.

**IT IS SO RECOMMENDED.**

Dated: October 4, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

21